IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

D'JUAN HUNTER,                          *

    Plaintiff,                       *

    v.                               *       Civil Action No.:  DLB-21-212

BRADLEY O. BUTLER, *et al.*,             *

    Defendants.                      *

                                     *

## MEMORANDUM

D'Juan Hunter, a prisoner confined at Western Correctional Institution ("WCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Acting Assistant Warden Bradley O. Butler, Lt. William Thomas, Sgt. Ronald Davis, and Correctional Officers ("CO") Randy Allison, Daniel Faulkner, and William Scarpelli.[1]  ECF 1.  Defendants moved to dismiss the complaint or alternatively for summary judgment.  ECF 14.  Mr. Hunter opposed the motion, sought leave to file an amended complaint, and asked the Court to appoint counsel for him.  ECF 18, 19, 20, 21.  Defendants have not responded to Mr. Hunter's filings, and these matters are ready for review.  *See* Loc. R. 105.2(a).  For the reasons discussed below, defendants' motion shall be granted, and Mr. Hunter's motions denied.  The complaint is dismissed.  To the extent plaintiff brought unexhausted claims, judgment is entered in defendants' favor on those claims.

## I.    Background

Mr. Hunter alleges that on January 18, 2020, when recreation time began, he observed "a trash bag, fashioned as a noose" hanging outside the recreation hall window for Housing Unit 1A

---

[1] The Clerk is directed to amend the docket to reflect the defendants' full names.

at WCI.  ECF 1, at 3; ECF 19-2, ¶ 1.  Approximately ten minutes later, CO Allison removed the trash bag while shift commander Sgt. Davis watched.  ECF 1, at 3; ECF 14-2, at 2.  Another inmate told Mr. Hunter that CO Allison described the event as a "joke with another inmate."  *Id.*  On February 18, 2020, Mr. Hunter complained in an Administrative Remedy Procedure ("ARP"), WCI-385-2020, that "Allison or another evening shift officer" hung the "noose" while "Sgt. Davis was in command of the building."  ECF 14-2, at 2, 4; ECF 1, at 3. The ARP was dismissed on February 27, 2020.  ECF 14-2, at 3.  The dismissal stated that Mr. Hunter's claims were investigated, found to be false and unsubstantiated by evidence, and that staff had not been unprofessional.  *Id.* at 3; *see also id.* at 5–7.

Mr. Hunter also claims that on February 23, 2020, Sgt. Davis and Lt. Thomas summoned him to sign off on the pending ARP about the noose, which would have effectively dismissed the complaint, but he refused.  ECF 1, at 3.  He alleges that Sgt. Davis told him that the trash bag fashioned as a noose was a joke between coworkers that he was taking out of context.  *Id.*  Mr. Hunter claims that he explained that a noose signifies white tyranny over Black people, which prompted Lt. Thomas to call him a racist.  When Mr. Hunter attempted to leave, the lieutenant told him to sit down or "there would be a problem."  *Id.*  Lt. Thomas eventually told Mr. Hunter to leave and said he was "full of shit."  *Id.* at 3–4.  According to Mr. Hunter, Sgt. Davis investigated the alleged noose hanging, which Mr. Hunter insists was a conflict of interest because Sgt. Davis participated in the incident.  *Id.* at 4.  Two days later, Mr. Hunter submitted an ARP, WCI-450-2020, regarding this interaction.  ECF 14-2, at 11, 13.  The ARP was dismissed on April 1, 2020, based on a finding that Sgt. Davis and Lt. Thomas did not act unprofessionally or outside the scope of their authority.  *Id.* at 12.

A few days later, on February 28, 2020, Mr. Hunter was transferred to Housing Unit 2 on C tier. ECF 1, at 4. He asserts that this transfer removed him from a building where he had various privileges, and it made him ineligible for a high paying job. *Id.* Mr. Hunter claims he was placed on C tier, which he alleges is a known gang environment, to make him uncomfortable. He claims he was transferred in retaliation for complaining about defendants' conduct regarding the noose. *Id.* He filed an ARP, WCI-514-2020, to complain about his housing transfer. *Id.*; ECF 14-2, at 22–24. Acting Assistant Warden Butler dismissed the ARP on March 17, 2020, reasoning that Hunter did not have a constitutional right to a specific housing assignment. ECF 1, at 4; ECF 14-2, at 23.

## II.     Failure to State a Claim

### A.  Standard of Review

Defendants move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir.), *as amended* (Jan. 20, 2017) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)); *see* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). Stated differently, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When resolving a Rule 12(b)(6) motion, the Court accepts the well-pleaded allegations as true. *See Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "does not resolve contests surrounding facts, the merits of a

claim, or the applicability of defenses." *Ray*, 948 F.3d at 226 (quoting *Tobey*, 706 F.3d at 387).

Complaints drafted by self-represented plaintiffs like Hunter are held to "less stringent standards"

than those drafted by attorneys. *See White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989).  Even

so, the Court cannot address a claim that is not "squarely presented."  *See Weller v. Dep't of Soc.

Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### B. Discussion

Mr. Hunter claims that defendants' display of a trash bag in the shape of a noose in the

recreational area was a threat of violence, subjected him to inhumane treatment, and violated his

constitutional rights.  ECF 1, at 1.  In his opposition, he asserts that defendants violated "Maryland

law 10-305.1 which prohibits use of [an] item or symbol to intimidate or threaten" and his rights

under the First, Eighth, and Fourteenth Amendments.  ECF 19, at 1.

To state a civil rights claim for damages pursuant to 42 U.S.C. § 1983, a plaintiff must

allege "(1) 'the conduct complained of was committed by a person acting under color of state law,'

and (2) this conduct deprived a person of rights, privileges or immunities secured by the

Constitution or laws of the United States." *Martin v. Duffy*, 977 F.3d 294, 298–99 (4th Cir. 2020)

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  There is no dispute that the

defendants were acting under color of state law.  The question here is whether the display of a

trash bag fashioned in the form of a noose for inmates to see during recreation time could constitute

a violation of federal law or the Constitution.

A noose is commonly viewed as a threatening symbol of racism and hatred towards Black

people.   It symbolizes lynching, which a United States Senator recently described as "a

longstanding and uniquely American weapon of racial terror that has for decades been used to

maintain the white hierarchy."  Peter Granitz, *Senate passes anti-lynching bill and sends federal*

*hate crime legislation to Biden*, NPR, Mar. 8, 2022, https://www.npr.org/2022/03/08/1085094040/ senate-passes-anti-lynching-bill-and-sends-federal-hate-crimes-legislation-to-bi.[2]   And, as Mr. Hunter points out, the display of a noose may violate Maryland law and could lead to criminal charges or civil liability under state law.  Md. Code Ann., Crim. Law § 10-305.1.[3]  But the same conduct prohibited under state law does not violate a constitutional right.

Generally speaking, "not all undesirable behavior by state actors is unconstitutional." *Pink v. Lester,* 52 F.3d 73, 75 (4th Cir. 1995).  "Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 Fed. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)); *see Huffman v. Schevel*, No. GJH-16-514, 2018 WL 4599648, at *4 (D. Md. Sept. 24, 2018) (same); *Cofield v. Hogan*, No. CCB-16-3037, 2018 WL 1535493, at *8 (D. Md. Mar. 27, 2018); *see also Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (verbal threats are not Eighth Amendment violation); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (noting "[m]ere allegations of verbal abuse do not present actionable claims under § 1983"); *Prescott v. Johnson*, No. 18CV577, 2022 WL 672694, at *14 (E.D. Tex. Mar. 7, 2022) (dismissing § 1983 claim "regarding verbal threats, name calling, and harassment" for failure to state a claim); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (observing that "no matter how inappropriate, unprofessional, or reprehensible [verbal harassment, including through the use of racial slurs and race-based threats] might seem,"

---

[2] Indeed, on March 7, 2022, the Senate unanimously passed the Emmett Till Anti-Lynching Act criminalizing lynching, a bill the House of Representatives already passed and which President Biden is expected to sign.  Granitz, *Senate passes anti-lynching bill*, *supra*.

[3] The law provides: "A person may not place or inscribe an item or a symbol, including an actual or depicted noose or swastika, whether temporary or permanent, on any real or personal property, public or private, without the express permission of the owner, owner's agent, or lawful occupant of the property, with the intent to threaten or intimidate any person or group of persons."  Md. Code Ann., Crim. Law § 10-305.1.

if it is "unaccompanied by any injury," it "does not constitute the violation of any federally protected right and, therefore, is not actionable under . . . § 1983" (citation omitted)); *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (describing "[v]erbal harassment and abusive language" as "unprofessional and inexcusable" but "simply not sufficient to state a constitutional claim"), *aff'd*, 23 F.3d 410 (7th Cir. 1994). Additionally, a prisoner cannot state a claim under § 1983 based on "taunting . . . by guards." *Cofield*, 2018 WL 1535493, at *8 (concluding that prison staff's alleged harassment of plaintiff "by using racial epithets [was] not enough to state a § 1983 claim" because the conduct did not "result in a constitutional deprivation) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)). The conduct Mr. Hunter alleges, if true, is certainly reprehensible, but it is akin to a racial epithet, threat, or taunt—none of which resulted in a constitutional deprivation. As offensive as the alleged conduct is, the display of a trash bag in the shape of a noose for inmates to see during rec time does not rise to the level of a constitutional violation. *See Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim because "such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation"); *Henslee*, 153 Fed. App'x at 180; *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (affirming dismissal of claim because no "appreciable injury" resulted from name-calling); *Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983) ("A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); *Cofield*, 2018 WL 1535493, at *8 (quoting *Lamar*); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (verbal harassment is not constitutional violation if it is "unaccompanied by any injury" (citation omitted)). Mr. Hunter fails to state a claim upon which relief may be granted, and his complaint must be dismissed.

**III.     Failure to Exhaust Administrative Remedies**

Defendants contend that Mr. Hunter brings three claims—each corresponding to one of the ARPs he filed—and they raise the affirmative defense that Mr. Hunter has failed to exhaust his administrative remedies to the extent he asserts claims based on the facts alleged in the second and third ARPs because he did not seek IGO review of those claims.  ECF 14-1, at 7.  On that basis, they ask the Court to grant summary judgment in their favor on claims arising from Lt. Thomas's abusive conduct during a meeting with Mr. Hunter one month after Mr. Hunter reported the noose incident and the subsequent retaliatory transfer to an undesirable housing unit.  Mr. Hunter counters that he did exhaust his administrative remedies, and in support of his position, he submitted a July 24, 2020 letter from IGO Administrative Officer II Sandra Holmes regarding ARP WCI-385-2020, which concerned the noose incident.  ECF 19-1.

Although plaintiff filed three ARPs and initially complained about each incident separately, the Court does not interpret Mr. Hunter's complaint to allege separate causes of actions based on these two later incidents.  Rather, the Court understands Mr. Hunter to allege that the defendants violated his constitutional rights by hanging an object in the shape of a noose in the recreation area for him and other inmates to see.  The subsequent and related allegations of threats and abuse by Lt. Thomas and Sgt. Davis and the retaliatory housing transfer provide factual context for the one claim he presents to this Court.  If, however, Mr. Hunter is alleging separate claims based on these two incidents, he has not exhausted his administrative remedies for those claims.

**A.  Standard of Review**

To address defendants' argument that plaintiff failed to exhaust any claims based on the later incidents, the Court considers the evidence plaintiff submitted to show exhaustion and therefore treats defendants' motion as one for summary judgment under Rule 56.  *See* Fed. R. Civ.

P. 12(d); *see also* ECF 15 (notice that the motion could be construed as one for summary judgment). Summary judgment is appropriate when the moving party establishes, through materials in the record, that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). "To avoid summary judgment, [plaintiff] must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### B.  Discussion

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is mandatory, and therefore the plaintiff must exhaust his available administrative remedies before this Court will hear his claim. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005).

An administrative remedy procedure process applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 *et seq.* A prisoner seeking redress for a rights violation must follow that process by first filing an ARP with the prison's managing official, then appealing any dismissal to the Commissioner of Corrections, and then filing a grievance with the Inmate

Grievance Office ("IGO").    Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; COMAR 12.07.01.03, .04; *see Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).   The IGO may refer the complaint to an administrative law judge ("ALJ") for a hearing and proposed decision, which the Secretary of Department of Public Safety and Correctional Services uses to make a final agency determination. *See* Corr. Servs. §§ 10-207(c), 10-209; COMAR 12.07.01.07.   Or, the IGO may dismiss the complaint without a hearing if it is "wholly lacking in merit on its face," in which case the dismissal serves as a final agency determination.   Corr. Servs. §§ 10-207; COMAR 12.07.01.06A.

The IGO letter Mr. Hunter submitted to the Court shows that he exhausted only the claim referenced in ARP WCI-385-2020, which concerned the noose incident (and which is the claim he presented to this Court).   ECF 19-1.   The letter stated that his appeal, which described incidents on different dates, "seem[ed] to consist of multiple complaints/claims for relief," each of which had to be appealed separately. *Id.* at 2.   He was directed to resubmit an appeal that clearly stated which decision he was appealing. *Id.*   Finally, the letter directed Mr. Hunter to show cause why his grievance should not be dismissed for failure to properly exhaust the ARP process.   ECF 19-1, at 2.   The letter also stated that if the IGO did not receive his resubmission within 30 days, his "grievance [would] be dismissed pursuant to Md. Code Ann. Corr. Serv. § 10-207(b)(1), without further notice to [him]." *Id.*

Upon careful review of the July 24, 2020 letter, the Court finds that Mr. Hunter failed to exhaust his administrative remedies for any claims based on Lt. Thomas's conduct after Mr. Hunter reported the noose incident and Mr. Hunter's subsequent transfer to another housing unit. Mr. Hunter was given 30 days to resubmit his appeal in accordance with the letter's instructions, and he has not presented any evidence (or argument) that he did so.   ECF 19-1, at 2; ECF 19, at

16–17.  Because the IGO recognized his appeal only as an appeal of the first ARP (WCI-385-2020), plaintiff exhausted his administrative remedies only for that claim.  *See* ECF 19-1, at 2; *see also* Corr. Servs. § 10-207(b)(1).  Neither the letter nor the record as a whole demonstrates that Mr. Hunter properly appealed the second and third ARPs (WCI-450-2020 and WCI-514-2020) to the IGO.  As Mr. Hunter failed to exhaust the administrative remedies available to him for those ARPs, this Court cannot consider claims based on them.  Therefore, insofar as plaintiff presents separate and distinct claims based on the second and third ARPs, defendants are entitled to summary judgment on those claims.

## IV.    Motions to Amend and to Appoint Counsel

Mr. Hunter sought leave to amend his complaint to correct the name of an inmate mentioned in his original pleading from "Orlando Bowman" to "Orlando Bowen" and to revise his request for relief.  ECF 18, 20.  These changes would not affect the Court's analysis of defendants' motion.  Even with the changes, Mr. Hunter could not assert viable claims under 42 U.S.C. § 1983.  Because his requested amendments would be futile, his motions for leave to file an amended complaint are denied.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that "futility of amendment" is a reason to deny opportunity to amend).

Because none of Mr. Hunter's claims survived the defendants' motion, his motion to appoint counsel is denied as moot.

## V.    Conclusion

Defendant's motion to dismiss, or in the alternative, for summary judgment is granted.  Plaintiff's complaint is dismissed.  Insofar as plaintiff brought claims based on Lt. Thomas's conduct after the noose incident or the housing transfer, judgment is entered in favor of defendants on those claims.  Mr. Hunter's motions to amend and to appoint counsel are denied.

A separate order follows.

_March 18, 2022_
Date

Deborah L. Boardman
United States District Judge